IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES L. GREER, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:14-cv-1777 |
| | ) Senior Judge Haynes |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**M E M O R A N D U M**

Plaintiff, James Greer, filed this action under 42 U.S.C. § 405(g) against the Defendant Carolyn Colvin, Acting Commissioner of Social Security, seeking judicial review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

Before the Court is Plaintiff's motion for judgment on the record (Docket Entry No. 15) contending, in sum, that the Administrative Law Judge ("ALJ") erred by failing to consider properly Plaintiff's functional capacity evaluation, the medical certificate completed by Dr. Babat, Dr. Hazlewood's opinion, and by failing to complete a function-by-function analysis in Plaintiff's residual functional capacity evaluation. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

The ALJ evaluated Plaintiff's DIB claim using the sequential evaluation process set forth at 20 C.F.R. § 416.920. (Docket Entry No. 11, Administrative Record at 14-16). At step one, the ALJ found that although Plaintiff had engaged in work since the alleged onset date of his disability, this work did not rise to the level of substantial gainful activity. Id. at 16. At step two,

the ALJ determined that Plaintiff does have a severe impairment: residuals of lumbar fusion. Id. This impairment "significantly limits the claimant's ability to perform basic work activities." Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). Id. The ALJ did not find any physician who determined that Plaintiff's impairments met or medically equaled a listed impairment, and did not find evidence in the medical record that Plaintiff met the criteria for a musculoskeletal disorder. Id. at 16-17. At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations: ability to lift and/or carry twenty pounds occasionally, and ten pounds frequently; ability to stand and/or walk for four hours and sit for four hours in an eight hour workday; ability to occasionally balance, stoop, kneel, crouch, crawl, and climb; and a mandate to alternate sitting and standing at will. Id. at 17. At step five, the ALJ utilized the testimony of the vocational expert to conclude that although Plaintiff is not capable of performing past relevant work, Plaintiff can perform certain other work. Id. at 21-22. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act and was not entitled to disability benefits. Id. at 23. Following this decision, Plaintiff requested a review. Plaintiff's request for review was denied on June 26, 2014.

### A. Review of the Record

On March 2, 2011, Plaintiff James Greer applied for Disability Insurance Benefits ("DIB"). Id. at 145. This application stated an onset date of August 1, 2010, and listed Plaintiff's medical condition as "bulging disc & pinched nerve in back." Id. at 191. At the time,

Plaintiff reported taking hydrocodone and morphine and requiring a walker and a cane. Id. at 193, 213.

Plaintiff's alleged onset date of disability is August 1, 2010. Id. at 60. On July 21, 2010, the date of Plaintiff's injury, Dr. Harold Nevels evaluated Plaintiff at Tennessee Urgent Care Associates. Id. at 260. Dr. Nevels noted that "[patient] went to pick up cardboard and fell. [Patient] states he fell backwards and landed on rightside. Injury occured around 9:00am this morning." Id. Plaintiff reported "numbness and pain," "pins and needles" and "pain 8 on a scale of 1 to 10." Id. Yet, Dr. Nevels wrote that Plaintiff "says hurts when he raises right leg but able to get normal elevation and does not appear to be in pain at the level of 8/10 as he describes." Id. at 262. Dr. Nevels prescribed several pain medications, including hydocodone, recommended application of heat and ice, and scheduled a follow-up in seven days. Id.

On July 26, 2010, Plaintiff returned, complaining of "constant and stabbing" pain that was "9 on a scale of 1 to 10." Id. at 257. Dr. Nevels noted that Plaintiff "says back pain worse and wants time off. [A]dvised I can only evaluate him today and place him on restrictions." Id. Dr. Nevels also noted that Plaintiff "feels he needs stronger medications for pain" and that Plaintiff "[b]ecame very angry with me when I advised I would not give him 'time off' but could only give him modified duty." Id. at 257, 258. Dr. Nevels recommended that Plaintiff see an orthopedist, then prescribed more hydrocodone and etodolac, another pain medication. Id. at 258.

On August 17, 2010, Dr. Brett Babat evaluated Plaintiff, noting that Plaintiff had "pain across the low back that radiates down to the right thigh and knee," and "his right leg gives out at times because of severe pain and pressure," and "[Plaintiff] rates his pain as a 10/10." Id. at 518-

3

519. After reviewing Plaintiff's X-rays, Dr. Babat prescribed Plaintiff two anti-inflammatory drugs and physical therapy combined with exercise. Id. at 519. Dr. Babat's diagnosis was "possible disc herniation, spondylosis, and radiculitis." Id. Dr. Babat also completed a "Work Status Report" for Plaintiff, with the following restrictions: "avoid lifting more than 5 pounds," "no continuous bending, stooping, lifting, twisting," and "sit/stand as needed." Id. at 520. Dr. Babat cleared Plaintiff to return to light duty a week later, on August 23, 2010. Id.

On August 27, 2010, Plaintiff returned, complaining that he was "still having pain going down his right leg." Id. at 516. Dr. Babat suggested a "right-sided L4-5 transforaminal epidural steroid injection" and applied "no changes in work status." Id. Dr. Babat completed another "Work Status Report," restricting Plaintiff from "lifting more than 10 pounds," and "continuous bending, stooping, lifting, twisting." Id. at 517. Plaintiff was allowed to return to light duty that day. Id.

Plaintiff returned to Dr. Babat on September 7, 2010. Id. at 515. Dr. Babat reported, "Mr. Greer is not doing any better," and noted that Plaintiff was awaiting worker's compensation approval for his epidural injection. Id. On September 21, 2010, Plaintiff received an epidural injection. Id. at 513.

On September 30, 2010, Dr. Babat reported that Plaintiff's steroid injection did not help, Plaintiff had difficulty sitting for more than thirty minutes, standing or walking for more than ten minutes, Plaintiff "appear[ed] to be frustrated" and [Dr. Babat] "had difficulty getting feedback during the evaluation." Id. at 510-512. On October 1, 2010, Plaintiff reported that after the procedure, "all his pain returned." Id. at 508. Dr. Babat's notes reflect that Plaintiff was "lying prone during the interview, even just sitting up just to talk causes him terrible pain. The right leg

4

has given out on him and he has fallen more than once now." Id. Dr. Babat suggested a discectomy, and Plaintiff agreed. Id. Dr. Babat reported that because Plaintiff was "taking more than 10 Lortab [a pain medication] a day and still not getting adequate relief," he prescribed Percocet. Id.

On October 12, 2010, Plaintiff returned with "no significant change." Id. at 506. According to Dr. Babat, Plaintiff had "shown little to no improvement toward treatment goals. [Patient] refuses to attempt to ride bike and has been reluctant to perform exercises despite education on benefits of therapy. [Patient] appears to want surgery." Id.

On February 9, 2011, Dr. Babat performed Plaintiff's surgery. Id. at 265. The surgery involved a "L4-L5 transforaminal lumbar interbody fusion, L4-L5 posterior spinal fusion, L4-L5 anterior interbody device application, and L4-L5 instrumentation." Id. at 266. At discharge, Dr. Babat noted that "[Plaintiff's] pain did improve." Id.

On February 22, 2011, Dr. Babat reported that Plaintiff had "not been outside the house," but "overall, he is getting better." Id. at 503. Plaintiff was able to stand from a wheelchair, and walk "upright to the X-Ray Department and back without any problems." Id. Dr. Babat's records reflect that he prescribed "MS Contin 30 mg and Lortab 5 mg" for pain and two weeks off of work. Id.

On March 22, 2011, Plaintiff returned, saying "overall he [felt] much better," and "he [was] moving much better now." Id. at 501. Plaintiff walked with a cane, but could also walk without it. Dr. Babat refilled his Percocet prescription and released him to work with the following restrictions: "[a]void lifting more than 10 pounds. No bending, twisting, or stooping." Id.

On May 24, 2011, Plaintiff returned to Dr. Babat with complaints of pain and numbness "in a different neurologic distribution than in his preexisting problem," and Dr. Babat "gave him reassurance regarding this." Id. at 499. Dr. Babat recommended physical therapy and kept Plaintiff's current work restrictions. Id. Plaintiff presented "a letter from his attorney," but Dr. Babat believed it was "far too early for [him] to put [Plaintiff] at [Maximum Medical Improvement] or to determine his impairment." Id. Following this visit, Dr. Babat completed a "medical certificate" for the Tennessee Department of Labor and Workforce Development, noting that Plaintiff's injury was "serious enough to necessitate leaving usual work" from August 17, 2010 to July 5, 2011, his next scheduled appointment date. Id. at 429. Dr. Babat opined that Plaintiff was "expected to be able to return to usual duties" following that appointment. Id. Dr. Babat listed Plaintiff's restrictions as "no bending, stooping, lifting, twisting, sedentary work only, sit stand as needed." Id.

On June 23, 2011, medical consultant Dr. Michael N. Ryan conducted a physical residual functional capacity assessment ("RFC"). Id. at 408-416. Dr. Ryan imposed the following restrictions: occasionally lift and/or carry up to 50 lbs; frequently lift and/or carry up to 25 pounds; stand and/or walk for a total of 6 hours in an 8 hour workday; sit for a total of 6 hours in an 8 hour workday; unlimited push and/or pull; frequent climbing of ramp/stairs, balancing, stooping, kneeling, crouching, and crawling; occasional climbing of ladder/rope/scaffolds. Id. at 409-410. Dr. Ryan wrote, "[Medical Assessment] is not receiving controlling weight, as there has not been a [treating physician] relationship established with the [claimant]. Also, CE panelist does not take into consideration expected improvement." Id. at 414. Dr. Ryan concluded, "[t]he claimant's condition is currently severe. The level of severity is expected to

resolve within the 12 continuous months from the date of injury, 02/09/11. While the claimant's statements about his allegation(s) and [symptoms] limiting function are fully credible at this time, it is expected that these symptoms will resolve within 12 months of the lumbar surgery, 02/09/11." Id. at 415.

On July 1, 2011, Defendant denied Plaintiff's DIB claim. Id. at 65-68. On July 5, 2011, Plaintiff returned to Dr. Babat, complaining that "he was having some improvement and then he was forced to work in the 'hot sun' sitting on a hard chair for 8 hours and then his pain worsened." Id. at 493. Plaintiff reported that he did not have any benefit from the physical therapy and pain had migrated from the back of his right thigh to the front of his right thigh. Id. Dr. Babat noted that Plaintiff's pain remained 10/10 and Plaintiff had not made any gains in range of motion. Id. at 492. Dr. Babat suggested a CT myelogram that was performed on July 21, 2011. Id. at 493, 490. Dr. Babat stated that there was "no neurologic compression and certainly nothing to explain this pain," and referred Plaintiff to Dr. Hazlewood. Id. at 490.

On August 9, 2011, Dr. Jeffrey Hazlewood evaluated Plaintiff, noting "some mild signs of symptom magnification seen with distraction, etc, on Dr. Babat's examinations previously as well as myself today." Id. at 487. Finding Plaintiff's risk for opioid dependance to be low, Dr. Hazlewood continued Plaintiff's pain medication and prescribed a muscle relaxer. Id. Dr. Hazlewood continued the restrictions Dr. Babat placed on Plaintiff. Id. at 488.

On September 6, 2011, Dr. Hazlewood examined Plaintiff and reported that Plaintiff "states he is no better. He states he had an episode in which his right leg went numb for thirty minutes one day and then came back again." Id. at 446. Plaintiff also reported that "[h]e never did get his TENS unit and [Dr. Hazlewood] had ordered this. He continues to ask for stronger

pain medication, and on several occasions today tells [Dr. Hazlewood] that [he doesn't] have him on strong enough pain medication." Id. Regarding pain medication, Dr. Hazlewood wrote, "I had a long discussion with him about his urine drug screen today and we have a definite problem here. I am seeing narcotic seeking behavior today rather significantly." Id. As to Plaintiff's negative drug screen, Dr. Hazlewood stated that "one must consider the possibility of diversion. [Plaintiff] adamantly denies this." Id.

On September 21, 2011, Dr. Frank Pennington reviewed Plaintiff's file. Id. at 427. After considering new medical records submitted, Dr. Pennington concluded, "I have reviewed all of [the] evidence in file, and the assessment dated 6/23/11 is affirmed." Id. On September 23, 2011, Plaintiff's request for reconsideration of his DIB claim was denied. Id. at 70-72.

On October 4, 2011, Dr. Hazlewood reported that Plaintiff asked "for stronger pain medication, stating that he is not doing well and 'no one is listening to me.'" Id. at 444. Plaintiff's "random drug screen and pill count were appropriate with no problems noted." Id. Dr. Hazlewood noted Plaintiff's continued pain complaints, including "[c]ontinued complaints of low back pain with previous fusion," that Plaintiff seemingly "wants more and more opioids," and that Dr. Hazlewood did "not feel comfortable in going any higher on the opioids." Id. As a result, Plaintiff refused to continue to see Dr. Hazlewood. Id. Dr. Hazlewood noted that Plaintiff should wean off of opioids, and that Dr. Hazlewood "will not be held captive to [Plaintiff's] requests of continuing to escalate opioids." Id. Dr. Hazlewood discussed this decision with Plaintiff's case manager, who was present that day, and as an addendum noted "[t]he patient now says he will come back to me for treatment 'as I have no other option.'" Id. On October 13, 2011, Plaintiff requested a hearing by an ALJ regarding his DIB claim. Id. at 73.

On October 20, 2011, Dr. Babat reported that Plaintiff "has made some progress with Dr. Hazlewood although he is certainly not pain free." Id. at 482. Dr. Babat also noted that Plaintiff "takes hydrocodone one or two per day." Id. Dr. Babat recommended a functional capacity evaluation ("FCE") and set permanent work restrictions. Id.

On October 31, 2011, the FCE report noted that "[t]he patient demonstrated VARIABLE effort during testing. Therefore, the results of this evaluation may not represent current, maximum functional abilities and may or may not be used for return to work planning." Id. at 462. Further, "[t]he patient's subjective reports of pain DID NOT appear to correlate with behaviors at times during testing[.]" Id. The conclusions from the "material handling" testing were that "the patient demonstrated the ability to function at the SEDENTARY to LIGHT Physical Demand level," with maximum lifting/carrying of 0-11 pounds, but noted "**This is one portion of testing where the patient may have given less than full effort," based on Plaintiff's heart rate during testing. Id. Steve Morris, a certified athletic trainer, and Louie Carder, a physical therapist, conducted the FCE. Id. at 462-469.

On November 17, 2011, after reviewing the FCE results, Dr. Babat noted that Plaintiff "gave a variable effort during testing," that "makes the results of the FCE difficult to interpret and to use to set restrictions." Id. at 480. Dr. Babat also noted that "[t]he FCE report specifically notes that his subjective reports of pain did not appear to correlate with behaviors at times during testing," such as "[h]is range of motion was inconsistent when measured and distracted" and "[h]is heart rate changes did not correspond with what would be expected during his lift testing." Id. Dr. Babat concluded that Plaintiff was "certainly at [Maximum Medical Improvement]," and imposed a work restriction at "light DOT level." Id. Dr. Babat explained:

9

> This would be occasionally lifting 20 pounds and frequently 10 pounds. He can bend, twist, squat, and kneel and balance occasionally. He should not crouch. He can certainly occasionally climb, sit, stand and walk alternatively without limit. He can sit, stand and walk occasionally and as long as he is able to switch positions he can do so without restrictions.

Id.

On November 18, 2011, Dr. Hazlewood examined Plaintiff, noting that Plaintiff "'pulled something' during the FCE," Plaintiff's "pain has definitely been worse," and Plaintiff "has not had any improvement in his pain since the FCE." Id. at 442. Dr. Hazlewood noted that Plaintiff's "Wadell's signs are positive for overreaction," and that Dr. Hazlewood declined Plaintiff's request for an increase in pain medication. Id. at 442, 443. On November 29, 2011, Plaintiff returned to Dr. Hazlewood who noted that Plaintiff "had a flare up after his FCE, but it seems to have settled back down." Id. at 440. Plaintiff did not ask for an increase in pain medication. Id. at 442, 443. Dr. Hazlewood concluded, "I don't have any other options here other than just basic medication management." Id. at 441.

On December 8, 2011, Dr. Babat completed a "medical certificate" for the Tennessee Department of Labor and Workforce Development, stating that Plaintiff was released on November 17, 2011, opining that Plaintiff was not "able to return to usual duties." Id. at 428. For restrictions, Dr. Babat referenced his November 17, 2011 office note. Id.

On February 21, 2012, Dr. Hazlewood examined Plaintiff. Id. at 438-439. Plaintiff reported experiencing "a flare up" after moving in December 2011, but that his pain was "back to baseline." Id. at 438. Plaintiff stated that he wished his medication was "more stronger." Id. Dr. Hazlewood noted that it was "questionable if [Plaintiff had] permanent work restrictions," but that he was "looking for work." Id.

10

On May 31, 2012, Plaintiff returned for an examination by Dr. Hazlewood. Id. at 437. Dr. Hazlewood reported that "[i]f he 'moves a lot,' his entire body 'shuts down.' His back and legs give out." Id. Plaintiff expressed "concerns regarding what to do about his pain." Id. Plaintiff asked for an increased in pain medication, but Dr. Hazlewood declined Plaintiff's request. Id. Plaintiff also stated that he was "not working, but [was] looking for a job." Id.

On August 23, 2012, Dr. Hazlewood reported that Plaintiff was "managing okay," but that he was requesting pain medication. Id. at 434. Dr. Hazlewood noted that Plaintiff was "doing maintenance work now, working for General Dollar Store, working twenty - twenty eight hours per week. He is doing a lot of bending in his job, and states he has had some increased pain." Id. at 434. Dr. Hazlewood administered "trigger point" injections of "20mg Methylprednisolone/8cc of 1% Lidocaine." Id. at 435.

On December 21, 2012, Dr. Hazlewood completed a "Medical Opinion of Ability to Do Work-Related Activities" form. Id. at 460-461. Dr. Hazlewood noted that Plaintiff was restricted to occasional lifting of 10 pounds; frequent lifting of 10 pounds; standing and walking for up to four hours in a workday, with a limitation of standing for 20 minutes before changing position, and walking every 45 minutes, for 10 minutes at a time; sitting for up to four hours in a workday, with a limitation of sitting for 45 minutes before changing position; no need to lie down unexpectedly; occasional twisting, stooping, crouching, and climbing of stairs and ladders; no reaching more than occasionally; no pushing or pulling over 30 feet more than occasionally; avoid concentrated exposure to vibration; and an average of about one day absent from work per month. Id.

Plaintiff's ALJ hearing was conducted on January 11, 2013, with a supplemental hearing

on February 14, 2013. Id. at 37-59, 28-36. On April 11, 2013, the ALJ denied Plaintiff's claim. Id. at 11-27. On June 26, 2014, the Appeals Council denied Plaintiff's request for review. Id. at 1-6.

### B. Conclusions of Law

The Social Security Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)).

Plaintiff contends that the ALJ failed to weigh properly the opinion from the FCE, Dr. Babat's medical certificate, his opinion in December 2011, and Dr. Hazlewood's opinion, and the ALJ failed to complete a function-by-function assessment in the RFC as required by SSR 96-8p.

As to the first contention, the two examiners who completed the October 31, 2011 FCE

12

were not treating sources. According to the FCE report, Plaintiff had "demonstrated a VARIABLE effort during testing," making the results unreliable and, perhaps, not suitable "for return to work planning." (Docket Entry No. 11, Administrative Record at 462). The examiners noted that "[t]he patient's subjective reports of pain DID NOT appear to correlate with behaviors at times during testing." Id. Regarding Plaintiff's ability to return to work, the examiners opined that "the patient demonstrated the ability to function at the SEDENTARY to LIGHT Physical Demand level," but specifically noted "**This is one portion of testing where the patient may have given less than full effort." Id. On November 17, 2011, Dr. Babat reviewed the FCE, and imposed a work restriction at "light DOT level." Id. at 480. Dr. Babat explained:

> This would be occasionally lifting 20 pounds and frequently 10 pounds. He can bend, twist, squat, and kneel and balance occasionally. He should not crouch. He can certainly occasionally climb, sit, stand and walk alternatively without limit. He can sit, stand and walk occasionally and as long as he is able to switch positions he can do so without restrictions.

Id.

Plaintiff asserts that pursuant to Social Security Regulation 06-3p, the ALJ was required to give specific weight to the FCE. The regulation, "Considering Opinions and Other Evidence from Sources Who Are Not 'Acceptable Medical Sources' in Disability Claims," establishes guidelines for considering evidence from non-acceptable medical sources and from non-medical sources. As to the "explanation of the consideration given to opinions from 'other sources,'" the regulation states:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their personal capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator

must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-3p, 2006 WL 2329939, at *6.

The ALJ addressed this report by referring to Dr. Babat's review rather than to the report itself. Id. at 19. The ALJ gave "great weight" to Dr. Babat's opinion, including his interpretation of the FCE report. Id. at 21. Thus, the ALJ did "otherwise ensure that the discussion of the evidence in the determination of decision" allowed Plaintiff "to follow the adjudicator's reasoning."

In any event, Dr. Babat's restrictions are not substantially different from the restrictions given in the FCE report. The FCE report contains blank spaces in which to write how many pounds a patient is able to lift or carry and to what height the patient is capable of lifting. For instance, the FCE states that Plaintiff can lift up to 11 pounds occasionally from waist to shoulder and up to 9 pounds occasionally from shoulder to overhead. Id. at 465. These restrictions are not substantially different from Dr. Babat's restrictions of occasionally lifting 20 pounds and frequently lifting 10 pounds. Id. at 480. Dr. Babat noted that the FCE did not provide a determinative evaluation as the report stated that Plaintiff's effort was "variable" and that the results "may or may not be used for return to work planning." Id. at 462. Thus, the Court concludes that the choice to give great weight to a treating physician's interpretation of a report that is admittedly unreliable rather than to the report itself is not meaningful error.

Plaintiff next asserts that the ALJ did not give adequate weight to Dr. Babat's medical

14

certificate. On December 8, 2011, Dr. Babat completed a medical certificate for the Tennessee Department of Labor and Workforce Development. Id. at 428. This form reflects that Plaintiff was under Dr. Babat's treatment from August 17, 2010 to November 17, 2011. Id. On the form, Dr. Babat opined that Plaintiff had an "injury or condition serious enough to necessitate leaving usual work" and that Plaintiff was not "able to return to usual duties." Id.

As a treating physician, Dr. Babat's opinion is accorded special weight. "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (quoting former 20 C.F.R. § 404.1527(d)(2), now § 404.1527(c)(2)). Yet the ALJ did not set forth his findings regarding the medical certificate. The Defendant asserts that "[w]hile the ALJ mentioned the report (Tr. 20), but omitted specific analysis of this report, the ALJ stated that Plaintiff was able to work shortly after the lumbar fusion (Tr. 21),"that was performed by Dr. Babat on February 9, 2011. (Docket Entry No. 16, Defendant's response, at 7). The "ALJ mentioned report" actually refers to Dr. Babat's June 22, 2011 medical certificate that the ALJ misdates as July 5, 2012. (Docket Entry No. 11, Administrative Record at 20). The ALJ does not reference the December 8, 2011 medical certificate. The ALJ found that "[t]he claimant's treating physicians determined the claimant was able to work shortly after his lumbar fusion in February 2011." Id. at 21. On March 22, 2011, Dr. Babat restricted Plaintiff to no lifting over 10 pounds and no bending, stooping, or twisting. Id. at 501. On May 24, 2011, he renewed these restrictions. Id. at 429. On June 23, 2011, consulting physician Dr. Ryan opined that Plaintiff's condition was "severe" and was expected to lessen one year from the February

15

2011 surgery. Id. at 415. The ALJ gave Dr. Ryan's opinion "little weight" as well as the opinion of consulting physician Dr. Pennington, who affirmed that opinion. Id. at 21. The FCE was performed on October 31, 2011. Id. at 462. On November 17, 2011, Dr. Babat, referencing Plaintiff's FCE, concluded that Plaintiff was at MMI and set forth Plaintiff's restrictions. Id. at 480. Yet neither of these reports restricted Plaintiff from all work.

Because the ALJ did not discuss the December 2011 medical certificate in his report or address what level of weight it was given, the Court concludes that this action should be remanded for consideration of whether the Plaintiff is entitled to a closed period of benefits beginning on August 17, 2010.

Next, Plaintiff asserts that the ALJ did not properly evaluate Dr. Hazlewood's "medical opinion of ability to do work-related activities" form. Dr. Hazlewood completed the form on December 21, 2012. (Docket Entry No. 11, Administrative Record at 460-461). Dr. Hazlewood restricted Plaintiff to occasional lifting of 10 pounds; frequent lifting of 10 pounds; standing and walking for up to four hours in a workday, with a limitation of standing for 20 minutes before changing position, and walking every 45 minutes for 10 minutes at a time; sitting for up to four hours in a workday with a limitation of sitting for 45 minutes before changing position; no need to lie down unexpectedly; occasional twisting, stooping, crouching, and climbing of stairs and ladders; no reaching more than occasionally; no pushing or pulling over 30 feet more than occasionally; avoid concentrated exposure to vibration; and an average of one day absent from work per month. Id. The ALJ assigned the opinions of Dr. Hazlewood "great weight," "except for the lifting/carrying limitations," because Plaintiff admitted to lifting and carrying over 10 pounds at his current job. Id. at 21. Based upon the record, the ALJ applied the same restrictions

16

as Dr. Hazlewood with regard to sitting, standing, and walking along with occasional balancing, kneeling, crawling, stooping, crouching and climbing. Id. at 17. The ALJ gave a general restriction that Plaintiff "must alternate stand/sit at will," rather than the specific time-based restrictions given by Dr. Hazlewood. Id. These restrictions are not substantially different than those given by Dr. Hazlewood.

Further, the ALJ also assigned "great weight" to Dr. Babat's opinion and his different restrictions. In assigning "great weight" to an opinion, the ALJ does not need to mimic every restriction given by the physician. "Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." Nejat v. Commissioner of Social Sec., 359 Fed.Appx. 574 (6th Cir. 2009). See also Salisbury v. Commissioner of Social Sec., 2013 WL 427733 (N.D. Ohio, February 1, 2013).

Plaintiff also contends that the ALJ failed to include Dr. Hazlewood's opinion that Plaintiff may be absent from work up to once a month. At the hearing, Plaintiff's attorney asked the vocational expert about the consequences of missing one day per month, and the expert answered "[o]ne missed day a month would not be a significant factor. If there wasn't a good reason for it, there might be some reprimand, some mild disciplinary measure, but a rate of one day a month probably would not be a significant factor." Id. at 57. The ALJ was not required to include every restriction Dr. Hazlewood applied, as the ALJ's determination is supported by the balance of the entire record.

Lastly, Plaintiff asserts that the ALJ erred by failing to include a function-by-function assessment in the RFC. Plaintiff relies on SSR 96-8p that states that "[t]he RFC assessment must

first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The assessment of physical abilities includes "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 CFR 404.1545(b). The ALJ's RFC included restrictions for sitting, standing, walking, lifting, carrying, balancing, stooping, kneeling, crouching, crawling, and climbing. (Docket Entry No. 11, Administrative Record, at 17). Although Plaintiff does not specify which restrictions were omitted, there are not any restrictions in the RFC for pushing, pulling, or manipulative functions.

As discussed previously, the ALJ gave "great weight" to the opinions of Dr. Hazlewood and Dr. Babat. Dr. Hazlewood imposed a restriction of no pushing or pulling over 30 feet more than occasionally, and no manipulative restrictions. Id. at 460-461. Dr. Babat assigned only lifting, bending, twisting, and stooping restrictions. Id. at 501. By combining the opinions of these two physicians and reviewing the record as a whole, the ALJ could reasonably have determined that Plaintiff was not subject to pushing, pulling, or manipulative function restriction. And, "[a]lthough SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547 (6th Cir. 2002) (see also Collette v. Astrue, No. 2:08-cv-085, 2009 WL 32929 (E.D. Tenn. Jan. 6, 2009)). Plaintiff does not allege that his back injury has caused a pushing, pulling, or manipulative

18

function restriction. The ALJ generally discussed the medical and other evidence that informed the RFC. As such, Plaintiff's claim fails.

For these reasons, the Court concludes that the ALJ's decision is supported by substantial evidence and should be affirmed in part, and should be remanded for consideration of a closed period of benefits beginning August 17, 2010.

An appropriate Order is filed herewith.

**ENTERED** this the 20th day of April, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge